UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
UNITED STATES OF AMERICA,

                      -against-

LEONARD VINCENT LOMBARDO,

                      Defendant.
----------------------------------------------------------------------X

For Online Publication Only

**ORDER**
17-CR-318 (JMA)

**FILED**
**CLERK**
10/16/2020 3:44 pm
**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**APPEARANCES:**

Seth D. DuCharme
   Acting United States Attorney
Allen Lee Bode
 *Of Counsel*
Eastern District of New York
610 Federal Plaza
Central Islip, NY 11722
    *Attorneys for the United States*

Scott Gross, Esq.
The Law Offices of Scott Gross, P.C.
666 Old Country Road, Suite 305
Garden City, NY 11530
    *Attorney for Leonard Vincent Lombardo*

**AZRACK, United States District Judge:**

Pending before the Court is the motion for compassionate release of defendant Leonard Vincent Lombardo ("Defendant"). (ECF Nos. 30, 35.) For the reasons set forth below, the Court denies Defendant's motion.

**I.   BACKGROUND**

**A.  <u>Guilty Plea and Sentence</u>**

On October 17, 2019, Defendant pleaded guilty to one count of wire fraud, in violation of 18 U.S.C. § 1343, for his role in a long-running scheme in which he defrauded 115 victims-investors of approximately $6 million in investment money. (ECF No. 10 at 3.) Between July

2011 and December 2016, Defendant misappropriated approximately $686,651.68 of the investors' money and used it for his own personal benefit. (Id.) Most of the remaining money was ultimately transferred into Defendant's vaping/e-cigarette business. (Id.) This Court sentenced him to thirty-three months of incarceration followed by three years of supervised release. (ECF No. 27.) Defendant pleaded guilty to the misappropriation of $686,651.68 and was ordered to pay restitution of the entire investment funds in the amount of $5,424,093.93. (Id.)

### B. The Instant Motion

On April 20, 2020, Defendant self-surrendered to the BOP to begin serving his sentence at FCI Fort Dix. On the same day, his attorney sent a letter to the BOP requesting that Defendant be granted "compassionate release immediately." (ECF No. 31-1.) Two days later, the BOP sought clarification as to whether Defendant was "requesting Compassionate Release or Home Confinement?" (Id.) Defendant's attorney replied that Defendant sought to "be released and serve his sentence under home confinement" pursuant to the CARES Act. (Id.) Personnel at FCI Fort Dix later informed the government, on an unspecified date, that Defendant was ineligible for home confinement under the CARES Act, as of that date, he had only served approximately 3% of his sentence. (ECF No. 31 at 4 n.2.) On June 5, 2020, Defendant's counsel received a letter from the warden at FCI Fort Dix, dated May 20, 2020, denying Defendant's request because he had only served 3% of his sentence. (ECF No. 35-2.)

On May 15, 2020, Defendant filed the instant motion in this Court arguing he should be granted compassionate release under 18 U.S.C. § 3582(c) because his "obesity, severe asthma, frequent bouts of bronchitis, scar tissue damage from a stabbing injury in which he suffered a collapsed lung, and a currently benign tumor on his head" make him susceptible to contracting COVID-19 and developing severe complications while incarcerated. (ECF No. 30 at 8.) The

2

government opposed his motion, arguing, in part, that he had not exhausted his administrative remedies because he had not yet made a request to the BOP for compassionate release pursuant to Section 3582(c)(1)(A), rather than the CARES Act. (ECF No. 31 at 4-5.)

On May 27, 2020, this Court granted Defendant's request that it not "decide this motion, but . . . hold it in abeyance to permit counsel and Mr. Lombardo to transmit renewed requests for compassionate release to the warden and to await their administrative resolution." (Electronic Order, May 27, 2020.)

On May 28, 2020, Defendant's attorney sent a letter to the warden at FCI Fort Dix seeking compassionate release pursuant to Section 3582(c)(1)(A). (ECF No. 35-1.)

In an Order dated May 29, 2020, the Court explained that even though Defendant had not moved the Court to adjourn his surrender date in the face of the ongoing pandemic, the Court nevertheless "strongly urge[d] the BOP to make it a priority to take effective action to guard [Defendant] against exposure to COVID-19 . . . [and] act with acute sensitive to [Defendant's] interests in health and safety." (ECF No. 34 at 2-3.)

On June 8, 2020, the warden responded to Defendant's letter and requested that his counsel specify the category within the BOP Program Statement 5050.50, according to which the request should be considered and submit a detailed release plan. (ECF No. 35-3.) On June 12, 2020, Defendant's attorney responded asking that Defendant's request be considered under 18 U.S.C. § 3582(c)(1)(a)(i). (ECF No. 35-4.) On June 15, 2020, the warden sent a letter stating that the BOP had interpreted "extraordinary and compelling" circumstances to be limited to those within BOP Program Statement 5050.50 and because Defendant's request did not specify one of those categories, it would not be considered. (ECF No. 35-5.) On June 19, 2020, Defendant's attorney

3

asked the warden to consider his request for compassionate release under BOP Program Statement 5050.50(3)(a) entitled Terminal Medical Condition. (ECF No. 35-6.)

On July 28, 2020, Defendant's attorney filed a letter asking the Court to consider the motion for compassionate release that was being held in abeyance and to take into consideration the fact that Defendant's wife had recently passed away. Defendant requested that the Court order his release so that he could care for his four young children, as well as because of his health conditions. (ECF No. 35.)

At some point prior to September 2, 2020, Defendant made a request to a staff member at FCI Fort Dix for compassionate release based on the death of his wife. (ECF No. 37-1.) On September 2, 2020, the warden denied that request. (Id.) The warden stated that Defendant had not shown that he was the only available family member to provide care for his four children because Defendant's children had been residing in the care of their maternal grandparents—a continuation of the living arrangement that had existed prior to his wife's passing. (Id.)

On October 1, 2020, Defendant filed a letter asking the Court to now consider his motion for compassionate release. (ECF No. 36.) On the same day, the government filed a response opposing the motion. The government agreed that Defendant's motion is now ripe for review by this Court because his application for compassionate release based on the death of his wife had been denied by the BOP, and more than 30 days had passed since he submitted his application for compassionate release based on his medical conditions without the BOP acting. (ECF No. 37.)

## II.  LEGAL STANDARD

### A. Standard of Review

Unless an exception applies, a "court may not modify a term of imprisonment once it has been imposed." United States v. Pinto-Thomaz, No. 18-CR-579, 2020 WL 1845875, at *2

4

(S.D.N.Y. Apr. 13, 2020) (quoting 18 U.S.C. § 3582(c)).  The First Step Act, which modified 18 U.S.C. § 3582(c), allows a court to modify a defendant's sentence upon a motion of either (i) the Director of the BOP, or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A)(i).

The statute provides courts with discretion to grant compassionate release when there are (1) "extraordinary and compelling reasons" that warrant a sentence reduction, (2) the sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the sentence reduction "is supported by the factors set forth in 18 U.S.C. § 3553(a)."  United States v. Canales, No. 16-CR-0212, 2020 WL 2319294, at *2 (S.D.N.Y. May 9, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).

District courts may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."  United States v. Brooker, No. 19-CR-3218, 2020 WL 5739712, at *7 (2d. Cir. Sept. 25, 2020) (finding that "[b]ecause Guideline § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants [as compared to those brought by the BOP], Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling."); see also Simon v. United States, No. 07-CR-474, 2020 WL 5764322, at *2-3 (S.D.N.Y. Sept. 28, 2020) (quoting Brooker, 2020 WL 5739712, at *7).

Even if extraordinary and compelling reasons exist, a "court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release

5

is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." United States v. Davies, No. 17-CR-57, 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020); see also Simon, 2020 WL 5764322, at *3.

### III.  DISCUSSION

#### A.  Exhaustion

The parties do not dispute that Defendant exhausted his administrative remedies.

#### B.  Extraordinary and Compelling Reasons for Release

Defendant bears "the burden of showing that 'extraordinary and compelling reasons' to reduce his sentence exist." United States v. Gotti, No. 02-CR-743-07, 2020 WL 497987, at *5 (S.D.N.Y. Jan. 15, 2020).

##### 1. Defendant's Medical Conditions

Defendant, who is 45 years-old, argues that he is at an increased risk of contracting COVID-19 and developing severe illness should he contract COVID-19 because he suffers from "obesity, severe asthma, frequent bouts of bronchitis, scar tissue damage from a stabbing injury in which he suffered a collapsed lung, and a currently benign tumor on his head," he is a smoker, and "he takes prescription medications including Albuterol and Prednisone, the latter of which is an immunosuppressant medication." (ECF No. 30-1 at 8.) As support, Defendant attaches a short letter from an internal medicine/nephrology doctor stating that: he "suffers from chronic asthma that has worsened lately," has a history of "multiple stab wounds in the chest ten years ago," and "is at extremely high risk should he come down with COVID-19." (ECF No. 30-2.)  He also attaches copies of two prescriptions for Albuterol and Prednisone filled four days prior to his surrender.  (ECF No. 30-3.)  The government argues that Defendant "has not shown that he is at an increased risk of contracting or having a severe reaction to COVID-19," that "[s]uch common

6

conditions, standing alone, are not sufficient," and that his "generalized complaints about the BOP's response to the COVID-19 pandemic, and his concern that he could contract COVID-19 at some point while incarcerated" do not meet his burden. (ECF No. 31 at 24-25.)

Though the Court is sympathetic to Defendant's medical conditions, it is by no means certain Defendant will contract COVID-19, particularly in light of: (1) the protective measures the BOP has taken to curb spread of the disease; and (2) the fact that the number of inmates currently testing positive for COVID-19 at FCI Fort Dix is 9 out of 2,636 total inmates.[1] See United States v. Weingarten, No. 08-CR-571, 2020 WL 2733965, at *3 (E.D.N.Y. May 26, 2020) (denying defendant's motion for compassionate release from FCI Fort Dix and noting that it was by no means certain defendant would contract COVID-19 "in light of the current health conditions at Fort Dix and the protective measures that it is taking to quell the disease's spread"); see also United States v. Corin, No. 10-CR-391-64, 2020 WL 5898703, at *3 (S.D.N.Y. Oct. 5, 2020) (denying defendant's motion for compassionate release from FCI Fort Dix, where defendant suffered from "chronic bronchitis, and upper respiratory infections due to a 2007 stab wound which left [him] with a collapsed lung"). As the Third Circuit observed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and

---

[1] On October 16, 2020, the number of inmates at FCI Fort Dix currently testing positive for COVID-19 is 9 and the number of staff testing positive for COVID-19 is 1. The BOP website states that to date, 35 inmates and 6 staff have recovered from COVID-19 and there have been 0 deaths. The BOP website also states that 106 total inmates have tested positive throughout the COVID-19 pandemic. See Federal Bureau of Prisons, COVID-19 Cases, www.bop.gov/coronavirus (providing daily calculations of confirmed infections) (accessed on October 16, 2020, at 8:55 a m.).

The Court is aware, however, that the BOP's self-reported numbers "must be treated with great caution," particularly because they may fail to account for asymptomatic transmission. United States v. Rountree, No. 12-CR-0308, 2020 WL 2610923, at *7 (N.D.N.Y. May 18, 2020). Accordingly, the Court echoes Judge Caproni's recognition that "[t]here is no question, however, that universal testing, apart from informing individual treatment decisions, would significantly aid efforts to detect and isolate infected individuals in order to reduce transmission in group settings." United States v. Rodriguez, No. 17-CR-157, 2020 WL 3051443, at *2–3 (S.D.N.Y. June 8, 2020).

7

professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

The Court acknowledges that Defendant's medical conditions place him at a heightened vulnerability for experiencing complications were he to contract the virus. Nonetheless, even if the Court were to assume, arguendo, that Defendant's "medical conditions put him at higher risk than the average inmate" to the effects of COVID-19, the relevant sentencing factors do not support a reduction of his sentence, as explained below. United States v. Carter, 18-CR-390, 2020 WL 3051357, at *3 (S.D.N.Y. June 8, 2020).

### 2. Death of Defendant's Wife

Alternatively, Defendant argues that independent of his medical conditions, an "extraordinary and compelling" reason for his release exists because his wife passed away on July 24, 2020 and he has four young children. (ECF No. 37-1.) Defendant asks the Court to take her death into account and to "order the release of [Defendant] so he can care for his children and to ensure they do not lose another parent." (ECF No. 35 at 5-6.) The Court is sympathetic to Defendant's loss of his wife and his children's loss of their mother. However, Defendant's children were already residing with and being cared for by their maternal grandparents prior to their mother's death. (ECF No. 37-1.) Thus, Defendant has not shown that this constitutes an extraordinary and compelling reason that warrants his release in order to care for them. Cf. Corin, 2020 WL 5898703, at *4 (denying defendant's motion for compassionate release based on his wife's death seven years prior where an aunt had been the child's caregiver for the past seven years).

Furthermore, even if the Court were to find that Defendant's wife's death constitutes an extraordinary and compelling reason, the relevant sentencing factors do not support a reduction of his sentence, as explained below. Carter, 2020 WL 3051357, at *3.

### C. Consideration of Section 3553(a) Factors

The Section 3553(a) sentencing factors weigh against granting compassionate release.[2] Defendant defrauded 115 victims of approximately $6 million. (ECF No. 10 at 3.) At sentencing, the Court imposed a sentence of thirty-three months of imprisonment and ordered Defendant to pay $5,424,093.93 in restitution. (ECF No. 27.) Granting his motion would mean that Defendant would serve under 6 months of his original 33-month sentence. Compassionate release would create an unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct. A reduction of the Court's original sentence would also fail to reflect the seriousness of the offense Defendant committed and would not provide a just punishment for his conduct. It would also undermine the Court's attempt to use the sentence to promote respect for the law and serve as a deterrent for criminal conduct. For the reasons set forth in detail on the record at Defendant's sentencing, which the Court incorporates by reference,

---

[2] These factors are:
   (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
   (2) the need for the sentence imposed—
      (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
      (B) to afford adequate deterrence to criminal conduct;
      (C) to protect the public from further crimes of the defendant; and
      (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
   (3) the kinds of sentences available;
   (4) [the kinds of sentences and sentencing range provided for in the USSG]
   (5) any pertinent [Sentencing Commission policy statement]
   (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
   (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

9

Defendant's sentence was necessary to achieve these goals. Accordingly, the Section 3553(a) factors weigh against granting Defendant's motion.[3]

## IV.  CONCLUSION

For the reasons set forth above, Defendant's motion is DENIED.  This application is denied without prejudice to its renewal should Defendant's condition or the situation at his facility materially worsen.

**SO ORDERED.**

Dated:  October 16, 2020
         Central Islip, New York

                                                /s/ (JMA)
                                               JOAN M. AZRACK
                                               UNITED STATES DISTRICT JUDGE

---

[3] Alternatively, Defendant requests that the Court make a non-binding recommendation to the BOP that "he be designated to serve his sentence under home confinement, or to furlough him at the very least until a vaccine for COVID-19 becomes available and the danger of infection can be mitigated." (ECF No. 30-1 at 18.)  The Court has considered whether to recommend to the BOP that Defendant serve his sentence under home confinement until the risks from the COVID-19 pandemic have decreased.  See United States v. Stahl, No. 18-CR-694, 2020 WL 1819986, at *1–2 (S.D.N.Y. Apr. 10, 2020) (making a recommendation for temporary release to home detention but recognizing that such a decision "is committed to sole discretion of the BOP.")  The Court, however, finds that such a recommendation is inappropriate at this time.  As explained earlier, there are currently 9 inmates who have tested positive for COVID-19 at FCI Fort Dix.  If the situation at Defendant's facility were to substantially worsen, Defendant is free to renew his request to the Court for such recommendation.